Please the Court, Brad Schaefer appearing on behalf of the appellants. I'd like to reserve four minutes of my time for rebuttal. You have a clock there, and you just sort of look at it. Thank you, Your Honor. You've got to left whatever is left on the clock when you sit down. Okay. Last Monday, this Court noted in the case of the Center for Fair Public Policy that it was addressing an issue of first impression within this circuit. This case requires this Court to address an issue of first impression across the land because there is no I want to go back to at least King John. Is this the case? Does it do it? Your Honor, even in the Chancery Courts of England, there have been no decisions about how the secondary effects doctrine is to be interpreted after a litigant successfully casts doubt upon the government's justification for enacting the legislation in the first place. Okay. This case is about one year forward of the Eleventh Circuit's recent decision in Peekaboo Lounge, where a summary judgment decision was also entered against the litigant, and the Eleventh Circuit reversed that decision and held that the government, in light of PAPS and in light of Alameda, must now give a further justification for a theory, not necessarily a secondary effects theory, but a theory to substantiate the law. So we're on somewhat virgin ground here because the Supreme Court clearly has not given any guidance whatsoever, neither PAPS or Alameda, as to what we're supposed to do at this point. However, I believe that there is some guidance from the Eleventh Circuit in their Peekaboo Lounge case, because at the very least, we are now getting from the realm of intermediate scrutiny to strict scrutiny. I'm not going to talk about the difference of content neutrality versus content correlated any longer, because it appears that last week this circuit adopted the arguments in my brief that when you count heads in Alameda books, you come to the conclusion that there are five justices that say that these laws are content correlated, and therefore, we must decide what level of scrutiny to apply in regard to this matter. And I would submit that clearly strict scrutiny is warranted, and it is warranted here for a number of reasons. First of all, unlike both Barnes and PAPS, this is not an across-the-board public nudity prohibition. Justice O'Connor, in writing for the plurality in PAPS, states time and time again, we note that this is an across-the-board prohibition. The mere fact that one of the reasons that the government might have wanted to pass this law was because of potential secondary effects in regard to an adult entertainment facility does not change the fact that it was an across-the-board prohibition. This law specifically applies to dancing. It's not even nudity in an adult entertainment facility where you can make the argument, well, they're just trying to get rid of nudity and, therefore, nude waitresses. This is a law directed specifically at expression. There is also the discrimination. So if it's your position that if a restaurant in Beverly Hills decided to have nude waiters or waitresses, that would not violate this ordinance? It depends upon, Your Honor, how they would be defined in regard to the definitions of an adult entertainment establishment under the code. I mean, these were not singing waiters or waitresses. They were just your normal service, you know, reciting the menu, taking orders, pouring drinks, that kind of thing. Your Honor, I do not pretend to understand how the city of Beverly Hills would interpret that, and I don't say that flippantly. I'm trying to understand your position. I mean, clearly this does not apply to walking down the street. Yes, Your Honor. And which raises the interesting question, which you alluded to, is what does across-the-board mean? Does across-the-board mean it has to apply in every cubic inch of the city, or is it enough to be across-the-board to say this applies to every business establishment or every public business? You know, you could... Yes, Your Honor. And it seems to me that if this applies to waiters and entertainers and bartenders and people who serve behind the counter in the supermarket, you know, or, you know, the check stand in the supermarket and all that, that's one kind of across-the-board, which is different than an ordinance that says it applies to singing only. Yes, Your Honor. So that's the distinction I'm trying to focus on, which I thought is what you were focusing on. Yes. So the question is, would this ordinance... I mean, let's say that the pavilions in Beverly Hills decided it would be nice to have nude cashiers at the check stand. It would increase business. Would this ordinance apply to them in your view? In my view, probably not. It doesn't have the type of entertainment and dancing. If it's Justice O'Connor or, I'm sorry, Justice Kennedy was talking during the oral argument in Barnes about the fact of what happens when you have a topless donut shop. There actually was one in Virginia close to the court, and that's why he brought it up. And obviously that's not expressed. And I don't think that that would be covered by this ordinance the way the definitions are. I'm sorry. I didn't hear the word. You said would or wouldn't? I do not believe that it would, Your Honor. What's the definition that restricts it? Well, it's an adult cabaret. There are two definitions in this ordinance, Your Honor. One's an adult cabaret, and then there's also a catch-all provision at the end, and I don't remember exactly what they called it. But in my brief, I did point out that we would potentially fall within two of those definitions. But in addition... Before you get further away, to get maybe as far away from King John as we can, maybe get to Prince William, I have a question of what it is you're challenging here. I'm challenging two things. The denial of the injunction? No, Your Honor. This Court or a different panel of this Court has already – well, it depends on what injunction you're talking about. The permanent injunction, yes. The preliminary injunction, no. Another panel of this Court has already determined that we were procedurally barred because of the timing of what had gone on with regard to the supplemental briefing, so we could not appeal the preliminary injunction. What I'm appealing, Your Honor, is the denial of the request of permanent injunction that my client made and the sua sponte granting of summary judgment to the City of Beverly Hills on this issue of, number one, the clothing requirements of the ordinance and the expansion of licensing and regulatory provisions in regard to pasty and g-string or, at some point in this litigation, it was bikini dancing as well. Yes, Your Honor. Which ordinance? Is it clothing ordinance? Which clothing ordinance? Well, the 1999 and the 2001. And theoretically, Your Honor, neither of those are totally and wholly applicable now because we have the 2002 ordinance that came into effect after the briefing, but what I would point out to the Court is that given the fact that the Court upholds the 1999 ordinance, which was the most expansive, which was the full bikini, ergo anything that is less than that, which is the 2002 ordinance, the decision is going to have to be the same. So if I were to go back into the Court now and amend my complaint and say, now I want to attack the 2002 clothing requirements, the law of the case is going to say that's over and done with because if you can ban the more, you can certainly ban the less. So those are the two issues I'm looking at. His ruling on the 1999 clothing ordinance, his ruling on the 2001 clothing ordinance, and his ruling that the licensing and regulations can expand to a facility that merely represents bikini dancing. I thought it was an intervening change in law. Doesn't that interrupt the law of the case vis-à-vis the 1999? Well, while I'm not sure what you would mean in regard to intervening law, certainly Alameda was decided before Judge Pregerson, who was obviously the district court also on Alameda, by Alameda Books, he took Alameda into account when he made his initial ruling that we had successfully cast doubt upon the government's rationale in the first place. Therefore, pursuant to Alameda, he threw the ball back into the court of the government and said, as the Supreme Court commanded, show us further substantiation. The government then didn't present any new evidence or a different type of justification. What the government did was they presented to the court the case of Tilly B., the California Court of Appeals decision, which, of course, is — Well, Your Honor, my motion was specifically in part for summary judgment in regard to the constitutionality of the 1999 clothing requirement. He denied the preliminary injunction, and then later in his — clearly in his first ruling, he denies the motion for permanent injunction. Then I file a motion for summary — I'm sorry, a motion for reconsideration, and I say, we see at the end of your opinion you say you're denying the motion for permanent injunction, but you say elsewhere in your ruling that the clothing requirement is constitutional. And I want to just make sure you are not granting the government summary judgment on that issue. And he clarifies, and he says, no, in my discretion, I can determine that there are no questions of material fact, and I can grant summary judgment to the other side, even though the City of Beverly Hills never moved for summary judgment in regard to the constitutionality of the 1999 and 2001 clothing requirements. He clearly did that, Your Honor. What's left before the district court now? What is left before the district court now is basically the — pursuant to his motion for summary judgment, I'll tell the Court in regard to those issues what is still left, there is a determination if the no-tipping requirement is constitutional, if the secondary buffer zone is constitutional. I don't remember — there was one or two other things that he articulated, but those are the matters that he stated in his ruling were still right for trial because there were material questions of fact. And when we submitted the initial briefing, we stated that the trial was in April. It has been extended. We've now stipulated to extend it again in part because of this process. You can only get before us because of the denial of an injunction. Yes, Your Honor. And the denial of injunction pertains to something that is no longer in effect, right? The 1999 or 2001 or something, it doesn't apply to the current law, 2002. Well — I'm a little confused as to how you're here. Sure. Let me address that in a couple of different ways, Your Honor. First of all, the expansion of the ordinance, and I mean the licensing and the regulatory provisions, to establishments that have bikini dancing is still there. That's what we challenged before. That's what we challenged now. So that issue is still there. In addition, Your Honor, in regard to the Mesquite v. Alladin's Castle case, the Supreme Court has clearly stated that even though a municipality may revoke an ordinance doesn't mean you still cannot challenge it. Now, maybe there is not a basis for preliminary injunctive relief because there's no potential of irreparable harm. But the cases that we had cited to the Court in regard to, I believe it's probably the intermediary briefing on the two orders that emanated from this Court, there's a body of case law that talks about that the courts have to be very careful so that the government does not play fast and loose by withdrawing an ordinance to preclude judicial relief on it, and then when the lawsuit's over, reenacting it. Now, what have we had here? The clothing requirements have gone through at least four maturations. The district court has now upheld the constitutionality of a full bikini requirement, even though, as I stand before Your Honor today, that is not the ordinance in regard to the clothing prohibitions. There is absolutely nothing to prohibit if this Court affirms the city of Beverly Hills now going back and then readopting the full bikini clothing requirement because the district court has already upheld it. And that's what gets me confused. I thought you said that he threw it back at the government on the 1999 ordinance. Yes, Your Honor. What — yes. He did initially in regard to our original motion for renewed motion for preliminary injunction and motion for summary judgment. He then said in light of Alameda, we have successfully cast doubt. It's now the government's burden to come forward. The government then files a brief pursuant to Judge Pregerson's request. All they rely upon is the California Court of Appeals' decision of Tilly D. We then file a brief in response that has a very elaborate affidavit of Dr. Daniel Linz, his second affidavit. And Dr. Linz's affidavit states clearly that predicated upon what the government is trying to rely on, there's nothing in that record to justify a bikini ordinance, and there's nothing to justify the expansion of licensing and regulations to a pasty and g-string club. At that point, Judge Pregerson enters a second ruling, and that second ruling denies my client's summary judgment at the very end of the ruling. But earlier in his analysis, he says that I find the clothing requirements to be constitutional. I then filed the motion for reconsideration saying, I don't care if you denied my motion for summary judgment as long as I can litigate this issue at trial. And he then comes back with an order, no, I granted summary judgment, sua sponte, to the City of Beverly Hills. Thank you. So what exactly am I trying to get enjoined here? Well, first the preliminary injunction. We have to treat this as a preliminary injunction appeal. Well, I don't think you have to, and I don't think pursuant to the previous order of a different panel of this Court, you can. You have to, because otherwise it's interlocutory. It is, Your Honor. So I think the only way you get to, so let's say you win beyond your wildest dreams. What would you be enjoining? Your Honor, all I'm asking at this point is for the Court to reverse the decision of the district court and let me go to trial, and attack the secondary effects justification. So you're not asking for anything to be enjoined? Well, certainly I've asked for the Court to reverse the denial of my permanent injunction, because I believe that the government has not substantiated. Well, but denial of permanent injunction is not a appealable order, unless it's final.  Well, Your Honor. So the only way you're up here in the jurisdiction is that this is a preliminary injunction appeal. Well, Your Honor, I specifically addressed that in our reply brief, that the case law substantiates that 1292A1 does, in fact, apply to summary judgments that are given as part of a permanent injunction. And, therefore, it is appealable, because there are part of the preliminary injunction. Pardon me? Permanent injunction? Permanent injunction, Your Honor. Absolutely. Because 1292A1 does not discuss a preliminary injunction. It does not utilize the word preliminary anywhere in it. What it says is that we can appeal the granting or denial of injunctions, whether preliminary or permanent. The rule doesn't limit itself to only to only preliminary injunctions. And, Your Honor, the names of the cases escape me, but so. So let's connect you to that. Yes, Your Honor. So what would you like us to enjoin? Well, it says since you're appealing the denial of permanent injunction, then what is it you would like us to direct? You know, you want to tell us that this Court was wrong in denying the injunction. So what should we then now tell this Court to enjoin? Your Honor, if the Court is going to go beyond the step of merely just reversing and allow me to attack the secondary effects justification at trial and then grant me a permanent injunction, which is the only other relief that I have up there in light of the panel's earlier decision, what I would ask the Court to enjoin would be the 1999 and 2001 clothing amendment, clothing requirement amendments to the ordinance. 2000 has been repealed, right? 2000. No, no, no. Well, 1999 and 2001 and then 2002. Parts of them have been repealed and parts of them have not. The part of 1999 that requires a dancer to wear a full bikini bottom, that's still in existence. That hasn't been repealed. Object to that. Yes, Your Honor. In addition, the expansion of the ordinance, and what I mean by that, the total licensing process and regulatory process, the no tipping requirements and everything like that, we can say that's not before us. No, it isn't, Your Honor. But the definition of what is an adult business has been changed in light of the 1999 and the 2001 clothing requirements. Your Honor, I see that I'm out of time. And I'll be more than happy to answer whatever questions you have. Just, let me, I want to straighten this out here in my head. Yes, Your Honor. I thought it was 2001 that had the bikini language. No, Your Honor, 1999. 2001, 2001. It didn't ask, example of semi-nude include without limitations a state of address consisting of a bikini outfit or equivalent clothing. That didn't come in in 2001? That did, but if you go back to 1999, the way they defined semi-nude, Your Honor, it would require a bikini outfit. Well, that's not the way I read 1999. It's there. I think it allows a little more than that. Anyway. Thank you. Okay. We'll hear from the city of Beverly Hills. Good morning. I understood the jurisdiction. I don't. Nor do I. Well, why do you think he's not, what's your view on it? Before we get to the. The notice of appeal in this case was styled as a notice of appeal from the preliminary injunction. Later, a panel of this court said, no, that's too late. They didn't appeal in time from the preliminary injunction. The only thing left open is the question whether this court has jurisdiction to consider the subsequent, the September order, which denied summary judgment and denied their request for permanent injunction insofar as that was part and parcel of the ruling. There is some mushy law on the subject of whether 1291A1 applies to interlocutory orders denying permanent injunctions. We believe it doesn't, and we believe that the Second Circuit case, Chappell and Company v. Frankel, which was decided back in the 60s, got it right. The purpose of interlocutory review is if the house is burning down, the court of appeals needs to have an opportunity to review something. If something is changing, if an injunction has been granted or if an injunction has been denied and status quo is changing, the court of appeals needs to have an opportunity, a vehicle by which to address that. The denial of a permanent injunction is an entirely different deal. And Mr. Schaeffer, with all respect, I don't think was being entirely candid with the court. Yes, the district court upheld the evidentiary basis for the adoption of the 99 and the 2001 amendments. He did not issue a blanket order saying, and the game's over as to the constitutionality of those two ordinances. Mr. Schaeffer's got 35 other grounds in his quiver that he's going to argue when we eventually get the case to trial. As to why the ordinance is unconstitutional for a bunch of other reasons. The only thing that Judge Pregerson has done, and I believe the only thing that's even colorably before the court, is the judge said, under the Alameda Books case, I believe, the court believes, that there was an adequate evidentiary basis before the city council to support the adoption of the 99 and the 2001 amendments. And the 2001 amendments, as the court noted, have been repealed. They were repealed in their entirety. They were adopted, frankly, in an attempt, after this lawsuit was filed, to narrow some of the issues. And the district court found that it didn't narrow those issues, so the city council repealed it. But that's the only thing that the trial court, the district court, ruled on. There are a ton of other objections, constitutional challenges, which he has left to articulate. So if this issue on which summary judgment was denied is wrapped up with a permanent injunction, that somehow has attached to it some irreparable harm issue, then we would have jurisdiction. But you say the irreparable harm issue is gone. Right. Because he wasn't allowed to appeal that on preliminary injunction, and he's not allowed to go behind it by wrapping it into the permanent injunction. Right. Is that what your argument is? Right. And from a very practical point, nothing's changed. He's not in a position to say. They continue to operate their lap-dancing emporium continuously and without interruption. So the purpose, the policy reason for interlocutory review, the policy reason for an exception to the requirement of a final judgment and the policy against piecemeal appeals, the reason for the exception to all of that doesn't exist here. But he's gone through all this licensing, or he doesn't have to do the licensing because this is under challenge? He they are presently operating without a license, and through an agreement with counsel, we have agreed that the city will not undertake to close them while the litigation is pending. Assuming we ever get there. Before you leave that, as you see it, given the present state of the record in the district court and the appeal here, what issues that have been raised so far would be foreclosed from further pursuit in the district court under law of the case? The district court in its several orders has resolved some, but not all, of the issues that were raised by the cross motions for summary judgment. So the judge has upheld the constitutionality of some of our ordinances provisions, and he has deferred ruling. For example, although the Ninth Circuit has upheld in other cases the requirement of six feet of separation between exotic dancers and patrons, the judge has said, I think there's a material issue of fact as to whether that requirement, though constitutional, constitutes an absolute bar to the market, and so I'm going to reserve that. Well, we will see what that means in the fullness of time. But given the procedural way this came up, as you say that the court held that the evidentiary bases for the 99 and Ott 1 ordinances were sufficient. That's correct. Now, given the appeal, they have attempted now to appeal that holding, if we simply affirm the district court, would they be barred from challenging that holding back in the district court? I believe so. They would be barred from relitigating the question of the sufficiency of the evidentiary showing with respect to the 99 and the Ott 1 amendments. I believe so. Because the summary judgment has to count for something. We've got a lot of debris that we've been trying to clear away, and at least that and the issue on the parking and a couple of the other issues that he dealt with in the order, it seems to me cleared away some of the underbrush. So I would not expect to have to relitigate that issue. But if there had not been this interim appeal, those issues could come up on appeal of the final order whenever that's entered. Yes. But there may be then some interim arguments about what was really final at the time of this appeal. Well, and that's one of the reasons, Your Honor, why I think the appeal is ill-considered because I do a lot of appellate work and I'm going to have to be watching Mr. Schaefer pretty carefully to make sure that the camel doesn't get his nose in the tent and I wind up three years from now when we're back before the Ninth Circuit re-arguing this question of the evidentiary basis for the 99 and the Ott 1 ordinances. It's the problem with piecemeal appeals, frankly. And so but, yes, to the extent that the case is properly here and to the extent that this Court has appellate jurisdiction, yes, those are the issues which I believe potentially are foreclosed once this Court makes a ruling. Could we avoid this is totally a hypothetical question and not intended to be result guessing, but could we avoid that kind of result by simply saying we had no jurisdiction? Yes. And I believe that that would be a, not only an intellectually honest, but I believe an interpretation true to the purpose and the intent of the statute allowing interlocutory appeals from preliminary injunction orders. Because almost any order, in a case where permanent injunction is sought, almost any pretrial order is going to have some impact on the eventual shape of the trial and, therefore, on the eventual injunctive relief that may or may not be granted. And under Mr. Schaefer's theory, if we allow interlocutory appeals whenever an order has some effect on a prayer for permanent injunction. Well, he's not saying quite that. He's saying when you grant summary judgment, you have precluded permanent relief on those grounds. So it's not like being denied discovery or subpoena or something like that. He says, look, in this case, we have certain grounds on which we wanted a permanent injunction, and those grounds are now gone. That's correct. And he should be able to appeal that when the case is over. I don't believe he should be able to take an interlocutory appeal. And that really is the issue. If this appeal had not been taken. You didn't file a motion to dismiss the appeal on that basis, right? No. And you didn't even argue in your brief that we should dismiss the appeal. What happened here? We argued. You argued the timeliness and the local rules. We argued the timeliness and the local rules. But you didn't argue this, that there was no appellate jurisdiction. And so I'm saying what happened here? Well, in a yes, we did obliquely argue that if the motion for reconsideration was a sham and did not operate to extend the time, then there's no jurisdiction. What emerged during the supplemental briefing that was ordered by the Court was that the district court in this case issued three separate orders, and the first order denied the preliminary injunction, and the two subsequent orders had nothing to do with the preliminary injunction. So this Court determined it had no jurisdiction. By that time, this Court simply asked for a supplemental brief on whether or not the Court had jurisdiction, and that was the basis on which we responded to the brief. If the motion for reconsideration was late, then there was no jurisdiction over that part of what the Court did. Right. Turning briefly, then, to the substance, Mr. Schaffer made a couple of offhanded remarks that are potentially have very serious consequences if the Court were to dismiss He said, for example, that the ordinance ought to be subjected to strict scrutiny. Not so. Even the case which he has cited, the Eleventh Circuit case, Peekaboo, plainly says that the case, when it's remanded, is going to be subject not to strict scrutiny, but to intermediate scrutiny. Well, but this ordinance seems to be directed at expression. It's not just a general ordinance. It doesn't apply to the States of Beverly Hills. It applies specifically to people engaged in entertainment, which is a form of expression. And, Your Honor, I believe that the State of Beverly Hills in particular is an important form of expression. I believe that in City of Erie v. Pabst AM, it was the same kind of a deal. It was a prohibition against ordinance in entertainment facilities. And the Supreme Court held that that was content neutral. I was looking at the area. I thought it was a more general ordinance. It just said you can't walk around in the buff. This is City of Erie v. Pabst. The City of Erie, Pennsylvania enacted an ordinance banning public nudity. I can't imagine anything more than that. It doesn't say you need establishment. It says public nudity. This is the first sentence of the opinion, or the first sentence of Justice Sotomayor's opinion. Here we go. First sentence under Part 1 of the opinion. September 28th, 1994, the City Council for the City of Erie, Pennsylvania enacted Ordinance 75-1994, a public indecency ordinance that makes it a summary offense to knowingly or intentionally appear in the public in a state of nudity. Sounds general to me. Sounds like if you did it in the middle of Town Square in Pennsylvania, you'd be in exactly the same situation as if you were in a nude bar. Whereas here in Beverly Hills, counsel argues, you can walk down the street without in a bikini or with G-string and pasties and not violate any disordinance, or maybe any ordinance, but if you want to entertain, then it's covered. Is he wrong about this so characterizing the ordinance? Your Honor, I don't know what the other provisions of the Beverly Hills Municipal Code or the penal statutes in California regarding indecent exposure would apply. It doesn't matter whether there are other laws. The question is whether this law is directed as an expression or this law is of general applicability. So I'm not asking you to give a blank check here for people to walk down Beverly, you know, Radio Drive or something in the buff. I'm just saying, could they prosecute, be prosecuted under this ordinance? And you know quite a bit about this ordinance because this is the ordinance you're litigating. Right. So putting aside other provisions they might have on the State law or other ordinances that might apply, is there anything about this ordinance that would make somebody that decided to walk down Radio Drive in pasties and a G-string subject to prosecution on this ordinance? No, although pasties and a G-string are allowed now under our new ordinance as amended. The point I wanted to make is that Barnes established. Well, that's because the ordinance was, the 2001 ordinance was repealed. That's correct. Which sort of raises the question of capable reputation in the Iranian review. I mean, do we have a commitment from you that the city is going to stick, is not going to come back and reenact? Is it so we are representing the court that the city of Beverly Hills is going to stick with the 2001 ordinance and. . . And the 2002 ordinance. I'm sorry, 2002 ordinance. And we need not consider the rest because the city is not going back. Is that. . . Always forward. Excuse me? Always forward. Haraspera ad astra. The city is not interested in. . . I take it that's a no. The answer is a yes. The answer is a yes. Oh, you're committing that on behalf of the city? The city is not. . . We haven't obtained. . . Interested in a lifetime of litigation. You understand that's a representation of the court that's binding on your client. Of course. Okay. And how many votes do you have on the city council? I think you have a majority. Once you represent the court, you bind your client whether your client likes it or not. Of course, that's a mootness doctrine that Judge Kaczynski is talking about. Nobody's raised mootness here. I thought they did. I thought there was a mootness argument. The one of the many arguments that was raised in the district court was we suggested to the court that by reason of the 2002 amendments, some of the issues that the plaintiffs were litigating about were no longer a concern because the ordinance had been amended and there's a lot of law holding that the courts should not attempt to enjoin an ordinance no longer in effect and that an injunction should speak as of the time it's been written. And they argued, well, this is just a litigation ploy. You're going to build an ordinance just to avoid adverse ruling, and as soon as this case goes away, you guys are going to go back and reenact it the same way, putting us at a burden expense and uncertainty, strife, unhappiness of having to litigate again and again. That's where we are, isn't it? But you've just told us it's never going to happen, so we can go on to the next issue, which is is this a general, or back to the original issue, is this an ordinance of general applicability? Okay, let's say you were, well, no. Let's say somebody were walking down Rodeo Drive. Getting to the nuisance laws at that point. I presume this applies more to females because, I mean, men don't need pasties. It's a woman walks down Rodeo Drive wearing whatever it is that this ordinance now prohibits, not enough clothing. Okay, no g-string. Whatever is prohibited by the 2002 ordinance, would this woman, would this person, would this woman be subject to punishment under this ordinance? I don't believe so because this ordinance is addressed to adult businesses. It's the adult business regulation. Given that that's the case, doesn't this make it more of a content, of an expression? So this is not of general applicability in the sense that it applies on every square inch of Redwood Hills. It only applies within businesses, and not all businesses. It doesn't apply to supermarkets. It doesn't apply to flower shops. It does not apply to cosmetics shops. It applies to certain kinds of entertainment businesses, right? Yes. Okay. Doesn't that take it out of the O'Brien and put it into the strict scrutiny? Because now you have something that entertainment is, I thought, inherently a communicative thing. It's hard to entertain without communicating. So doesn't that become strict scrutiny? That's the argument that Mr. Schaffer has been making, but it's an argument that the Supreme Court has refused to embrace. The Supreme Court in Barnes and in Alameda Books held that the ordinances there, which were regulating, in the one case, adult cabarets, and in the other case, adult bookstores, were content neutral. Now, Justice Kennedy, which is what he's referring to, suggested that he agreed with this. Wait a minute. Alameda Books was our court. I'm sorry. Say it again. Alameda Books was not the Supreme Court. Yes. Alameda Books was the U.S. Supreme Court decision from 2002. OK. And you're saying that is not strict scrutiny. I'm sorry. No, that's correct. Intermediate scrutiny is the holding in that case, as well as in Barnes, as well in the peekaboo case, which they cite from the 11th Circuit. Why is it intermediate scrutiny if it's addressed at content? Your Honor, the rationale is that it is not content-based. The ordinance is not addressed to what is it? He calls it content-correlated. It is addressing the adverse secondary effects that are associated with various types of adult businesses. That at least is the rationale that the Supreme Court has used to make a finding that things are content-neutral. We don't care what you say. It's the fact that you're saying it that we're regulating. Right. And that it is, I believe, what Justice Kennedy said. It is not the content of the books that are inside the store. It's the sordidness without that the laws are addressed to. And that has been at least the judicial rationale for casting them as content-neutral ordinances. Isn't it a little different in this case? I mean, they're actually saying when they start talking about what they're to wear, isn't that more directly regulating the business as opposed to those other parts of the ordinance which relate to more physical aspects of the plant? Isn't this more content-oriented than the Alameda Books case? What the ordinance as it's now in effect says is that performers may not appear nude. They must wear at least pasties and a g-string. Then it goes on to say that performers wearing more than pasties and a g-string up to less than a full bikini, nevertheless, are classified as adult businesses that are subject to our regulations. But we do not require them to wear bikinis anymore. That was the key change that was made in the 2002 amendments. I see I'm quite a bit over time. Okay. Thank you. Thank you. Okay. Come back. I'm an Eagle Scout, and I think you think I'm trying to pull something over on you, and I just want to prove that I'm not. Your Honor, if you go to the 1999 ordinance on Section 8, it talks about that what they are prohibiting is a performance, live performance characterized by the exposure of specified anatomical areas. If you go back to specified anatomical areas, it says less than completely and opaquely covered human genitals and pubic region, buttocks and the female breast, below a point immediately above the top of the areola. Nipple on down, that's a bikini the last time I checked. That was the first requirement of the bikini. So the 1999 ordinance requires the covering of the bottom of the breast. Up through the top of the nipple on down and a full buttocks. And Judge Kaczynski, you asked counsel to make a representation that he was going to have, you know, that they were just going to have pasties and g-strings, but that's not what the 2002 ordinance that is currently in effect does. As I pointed out earlier, while it allows a pasty, it does not allow a g-string because you have to have fully opaque covering of the complete buttocks. So I don't know if the Court's question is that they won't enforce the 2002 ordinance. I'll be more than happy to take a representation that they're only going to enforce pasty and g-string, but that's not what the law is. Now — The law, in your view, is pasties on top, bikini bottom. Yes, Your Honor. Okay. Yes, Your Honor. Now, counsel talked about the fact that Peekaboo on remand, after they successfully challenged the secondary effects justification, which Judge Pregerson found, he said it's subject to intermediate scrutiny. No, it isn't. And I apologize because I only have the slip opinion. But what they talk about, we note the fact that the adult lounge have managed in their as-applied challenge to cast doubt on the county's basis for enacting Ordinance 9918 does not mean that the ordinance could not ultimately survive intermediate scrutiny, whether under Alameda at this point summary judgment is inappropriate and the burden shift back to the municipality to supplement the record with evidence renewing support for a theory that justifies the ordinance. If it doesn't justify secondary effects, it is not subject to intermediate scrutiny. There was no evidence in here to try to justify intermediate scrutiny. And the final point that I want to make — I don't know how the city fathers can just use their gut feeling. Your Honor, I don't — You know, they know the city. They sort of know what's going on. Beverly Hills is a very small city. I'm sure the city fathers know it well. It's the largest municipal code I've ever seen of any municipality in the country, four volumes. It may be bigger than Los Angeles. I've never seen the Los Angeles municipal code. I'm willing to believe Beverly Hills is pretty substantial, but the head of the Supreme Court told us basically if the city council finds secondary effects, then we pretty much have to defer because they know best. They can rely on past studies. They can rely on their gut feeling. They can rely on the way the stars align. Justice O'Connor clearly says that they cannot rely on shoddy data or reasoning. We have a decision from this district court that has not been appealed that says that we cast doubt on the secondary effects motivation. We have the ability to challenge it. We did it. The Supreme Court reversed this Court's decision in Alameda Books because you didn't give the city a trial in order to substantiate the ordinance. All I want is a trial to substantiate that there isn't a valid secondary effects justification. The last thing that I wanted just to comment on is, has this panel been provided the subsequent briefing on the two orders of this Court in regard to the jurisdictional issue? Okay. I just wanted to point out I cited numerous Ninth Circuit cases, one as recently as 2003 that talks about the fact, and this is on pages 4 through 6. I feel there's a Ninth Circuit rule and then the Chappelle's Second Circuit rule is the opposite. Well, Your Honor, I mean, the Ninth Circuit has clearly held you can have interlocutory appeals under 1292a1 from a permanent injunction. And it also talks about summary judgment is inextricably intertwined in regard to a permanent injunction. And therefore, if summary judgment is part of the entry of a permanent injunction, that's immediately appealable under 1292. And, Your Honor, I point out at ER, the excerpts of record 272, and this is Judge Pregerson's ruling before I filed my motion for reconsideration. He says that the Court finds that the city has renewed support for a theory that justifies the ordinance. That's the exact decision that I'm appealing by way of this appeal. And then he talks about it is constitutional because it serves a substantial governmental interest. Now, Brother Counsel is right that I have other arguments on other portions of the ordinance. What I challenge here before this district court is that this particular provision, the anti-nudity provision and the expansion of the ordinance so that all the licensing and regulatory provisions apply to pasty and g-string establishments or even bikini establishments, that that doesn't pass scrutiny under the second and fourth prongs of O'Brien. The district court has rendered a final decision on that issue. Thank you. Thank you. The case is valid with stance amendments.
judges: Kozinski, Tg Nelson, Restani